# Richmond

## CHARLES D. CARTER V. COMMONWEALTH OF VIRGINIA.

October 14, 1968.

Record No. 6837.

Present, All the Justices.

*Joseph R. Johnson, Jr.* for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Charles D. Carter appeals from a final order entered on a jury verdict finding him guilty of statutory burglary and fixing his punishment at two years in the penitentiary.

Five of the ten assignments of error raise questions that merit discussion: whether the court (1) improperly admitted in evidence stolen radios seized from Carter's automobile, (2) improperly admitted in evidence shoes seized from Carter's person, (3) improperly gave an instruction respecting the presumption that arises from a defendant's exclusive possession of recently stolen goods, (4) improperly refused an alibi instruction, and (5) improperly denied a new trial because the recording device failed to record certain testimony and incidents of trial. We will state the evidence relating to those questions in the light most favorable to the Commonwealth.

Between 10:00 p.m. and 6:00 a.m. on the night of February 8-9, 1966, someone broke into Shaner's Television and Radio Shop in Madison Heights, Amherst County, and stole 5 radios, 5 television sets and a tape recorder. When Deputy Sheriff Bryant arrived at the shop he found a print of a man's right shoe measuring 12¾ inches in length and 4½ inches in width. The print revealed a hole, measuring 1½ inches in diameter, in the sole of the shoe.

At about 1:00 a.m. on February 9, two patrolmen chased, but were unable to overtake, a Plymouth automobile that was speeding east in the City of Lynchburg.[1] When they saw the same automobile travel-

---

[1] The Lynchburg city limits are about 2 miles from Madison Heights where Shaner's Television and Radio Shop is located.

ing west at 1:30 a.m., the patrolmen stopped the automobile and charged the driver, Carter, with speeding and improper registration. At the trial of this case, the patrolmen testified that they had not seen any radios or other appliances inside the automobile, and one patrolman testified that had any appliances been in the automobile, he would have seen them.

Shortly before midnight on February 15, 1966, Carter and a woman were arrested and jailed in Lynchburg on charges of robbery. Carter's Plymouth automobile, which he was driving at the time of his arrest, was taken to the City Hall parking lot.

Early in the morning of February 16, Officer Duff of the Lynchburg police force heard the woman ask Carter, "what will they do about those three R's [radios]". Carter answered, "if they find out where I got them they will charge me with statutory burglary and grand larceny". Carter also told her, "if they ask you where we got the radios tell them I bought them from a man at the Old Fort for about two dollars apiece".

According to the narrative statement in the record: At about 5:30 a.m. on February 16, Officer Duff, who had not obtained a search warrant, "went out to the City Hall parking lot and looked through the automobile of the defendant. He was looking for a wallet as evidence in another case. [Carter had been arrested for robbery.] . . . He opened the door of the automobile, leaned in the automobile and lifted up the radios from the floorboard and back seat of the automobile and copied down the make and serial numbers of the radios."

Having read in the newspaper about a burglary of a television shop in Amherst County, Officer Duff called Deputy Sheriff Bryant. Bryant came to Lynchburg, obtained a warrant for the search of Carter's automobile, and found a radio on the back seat and two radios on the floor "in view lying there".

On February 19 Deputy Sheriff Bryant, accompanied by a State trooper, went to the Lynchburg jail and served Carter with a warrant charging statutory burglary of Shaner's Television and Radio Shop. Carter's shoes were taken at that time. The right shoe matched the print found on February 9 in the shop except that the hole was 1¾ inches in diameter, instead of 1½ inches.

Subsequently, Carter told Deputy Sheriff Bryant that a friend, Donald Lambert, had borrowed his automobile at 12:15 a.m. on February 9 and had returned it at 1:20 a.m. At that time he and Carter removed radios, television sets and a tape recorder from the auto-

mobile, and placed them in Carter's cabin. The next day the friend took the television sets and gave Carter the radios. (Carter did not say what became of the tape recorder.)

Deputy Sheriff Bryant also said Donald Lambert had testified "in a lower court" that he had bought the radios from an unidentified person for $10.

## (1)

Defense counsel contends that the radios found in Carter's automobile were improperly admitted in evidence at his trial because they were seized as a result of an illegal search of the automobile by Officer Duff. This argument overlooks, however, the fact that the radios could be seen by anyone looking through the windows of the automobile.[2]

"A search implies a prying into hidden places . . . ." *People* v. *West*, 144 Cal. App. 2d 214, 219-20, 300 P.2d 729, 733 (1956); see *Davis* v. *United States*, 327 F.2d 301 (9th Cir. 1964). Because Carter left the radios in plain view, Officer Duff made no search of the automobile within the meaning of the Fourth Amendment to the United States Constitution. *See Harris* v. *United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.ed.2d 1067 (1968). Nor did Officer Duff make a search within the meaning of Code § 19.1-88, which makes a warrant the prerequisite of a search, because Code § 19.1-88 affords in substance only the same protection as that afforded by the Fourth Amendment. *See One 1963 Chevrolet Pickup Truck* v. *Commonwealth*, 208 Va. 506, 508, 158 S.E.2d 755, 757 (1968).

Alternatively, we hold that even if Officer Duff searched Carter's automobile, the search was legal. Defense counsel in contending that the search was illegal relies primarily on Code § 19.1-88, which provides: "No officer of the law or any other person shall search any house, place, vehicle, baggage or thing except by virtue of and under a warrant issued by a proper officer." Va. Code Ann. § 19.1-88 (1960 Repl. vol.).

But like the Fourth Amendment, Code § 19.1-88 proscribes only an unreasonable search without a warrant. "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *Cooper* v. *California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.ed.2d 730, 734 (1967), quoting from *United States* v. *Rabinowitz*, 339 U.S. 56, 66, 70 S. Ct. 430, 435, 94 L.ed. 653,

[2] See, in this connection, n. 4, *infra*.

660 (1950); *see One 1963 Chevrolet Pickup Truck* v. *Commonwealth, supra.*

In *Cooper* v. *California, supra,* the police arrested Cooper on a narcotics charge and impounded his automobile for forfeiture proceedings. The automobile was searched without a warrant a week later, and incriminating paper seized from the glove compartment was introduced at Cooper's trial. In holding that the warrantless search did not contravene the Fourth Amendment, the Court said:

> "[The] subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. * * * It would be unreasonable to hold that the police, having to retain the car in their custody . . . had no right, even for their own protection, to search it. It is no answer to say that the. police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'" 386 U.S. at 61-62, 87 S.Ct. at 791, 17 L.ed.2d at 733-34.

In *DiMarco* v. *Greene,* 385 F.2d 556 (6th Cir. 1967), the police arrested DiMarco for a parole violation and placed his automobile in a garage. When a garageman entered the automobile the next day to move it, he discovered a pistol partially exposed under the front seat. Citing *Cooper,* the court held:

> "[I]f discovery of the pistol constituted a search, then it was lawful as an incident to the arrest. Only a cursory search was made by the police at the scene [of the arrest] because of conditions then and there existing. The police officers, instead of the attendant, could have made the search at the garage on the following day while the car was still in their custody and where a search would have been more conveniently made and better performed." 385 F.2d at 561.

In *People* v. *Paxton,* 62 Cal. Rptr. 770 (1967), the police arrested Paxton and two accomplices for the kidnapping of a Mrs. Eichor, and impounded an automobile owned by the accomplice Sparks. Following a warrantless search of the automobile, the police seized a St. Christopher medal belonging to Mrs. Eichor. In upholding the legality of the search, the court said:

"The present case falls clearly within the guidelines drawn in *Cooper*, supra. Sparks' car was impounded because it was believed to have been the one used to follow Mrs. Eichor. It is reasonable to infer that the police believed that the vehicle contained evidence of *that* crime and thus impounded it for that reason. Therefore, the subsequent search and seizure of the St. Christopher medal was closely related to the reason that the appellants were arrested. * * *" 62 Cal. Rptr. at 774.

The case now before us also falls within the guidelines drawn by *Cooper*. When the police arrested Carter on the night of February 15 and jailed him, they necessarily assumed the custody of his automobile. Carter having been arrested for robbery, Officer Duff had reason to believe his automobile contained fruits of that crime. Officer Duff's entry into Carter's automobile to look for a wallet several hours after his arrest was therefore a reasonable search, if in fact it constituted a search. The search being reasonable, it violated no constitutional or statutory right. The fact that Officer Duff found radios when he was looking for a wallet does not render the search invalid. *Cotton* v. *United States*, 371 F.2d 385, 393 (9th Cir. 1967).

### (2)

Defense counsel contends that the court improperly admitted Carter's shoes in evidence because they were seized without a warrant and seized by Deputy Sheriff Bryant in Lynchburg, outside his jurisdiction.

After Carter's arrest, the police had the right to take his clothing into custody without procuring a warrant. *Cotton* v. *United States, supra; Robinson* v. *United States*, 283 F.2d 508 (D.C. Cir.), *cert. denied*, 364 U.S. 919, 81 S.Ct. 282, 5 L.ed.2d 259 (1960). The fact that the shoes were seized four days after Carter's arrest is immaterial because they were seized while he was held in custody after an arrest. Nor does it matter that Deputy Sheriff Bryant, rather than the State police officer who accompanied him to Lynchburg or an officer of that city, took the shoes. *Cf. DiMarco* v. *Greene, supra*, involving a search by a garageman after the defendant's arrest.

Before seizing Carter's shoes, Deputy Sheriff Bryant obtained a "confiscation order" from the county court of Amherst County in an *ex parte* proceeding. Although the county court had no authority to

issue such an order, we agree with the Attorney General that this order was surplusage. No order or warrant was required as a prerequisite to the seizure of Carter's shoes.

## (3)

Defense counsel complains of an instruction that advised the jury of the inference arising from the exclusive possession of recently stolen goods, when such possession is unexplained or falsely denied.[3] Counsel contends that this instruction was improper because the evidence did not show that goods stolen from the television shop were in Carter's exclusive possession or that he failed to explain his possession of the goods.

The evidence that Officer Duff found radios in Carter's automobile after his arrest on February 15 showed his possession of recently stolen goods. Defense counsel contends, however, that Carter had joint possession of the radios with the woman who was arrested with him, not exclusive possession. But since exclusive possession includes joint possession by two or more persons, Carter had exclusive possession of the radios even if the woman who was arrested with Carter also had possession of the radios. See *Barnes* v. *Commonwealth*, 190 Va. 732, 737, 58 S.E.2d 12, 14-15 (1950).

To explain Carter's possession of the stolen radios, defense counsel relies upon the evidence of Deputy Sheriff Bryant respecting statements made by Donald Lambert and Carter. If Lambert's statement is believed, he bought the radios from an unidentified person. If Carter's statement is believed, Lambert brought radios, television sets and a tape recorder to his cabin on February 9, and Lambert gave Carter the radios the next day.

---

[3] "The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the storehouse mentioned in the indictment was broken into and entered and that the personal property mentioned and described in the indictment was taken therefrom and that the breaking and entering and larceny was all a part of the same transaction; that is, committed at the same time and by the defendant and that the stolen goods or a part thereof were found shortly thereafter to be in the exclusive possession of the defendant and that any such possession has been unexplained or falsely denied then this is sufficient to raise an inference that the defendant is guilty of statutory burglary; and if from such inference taking into consideration the whole evidence you believe beyond a reasonable doubt that the defendant broke and entered into the said premises with intent to commit larceny therein then you shall find him guilty of statutory burglary.

"Exclusive possession as used in the above instruction does not necessarily mean possession of one person, but may include joint possession of two or more persons."

If the statements were believed, Carter's possession of the stolen radios was satisfactorily explained; if the statements were disbelieved, Carter's possession remained unexplained. The instruction, therefore, properly put to the jury the question whether Carter's possession of the radios had been explained.

### (4)

Defense counsel complains of the court's refusal to give this instruction:

> "The Court instructs the jury that the evidence introduced by the defendant that he was not at the scene of the alleged crime need not be such as to establish this as a fact in order to entitle him to an acquittal; but·if it is such as to create and leave in the mind of the jury a reasonable doubt of his presence there, then you shall find the defendant not guilty."

In support of this alibi instruction, counsel relies on the testimony of the police officers who saw Carter speeding through Lynchburg at 1:00 a.m. on February 9, stopped him after they saw him again at 1:30, and did not see any radios or other appliances in his automobile. Counsel contends that the uncontradicted evidence showed that the burglary was committed shortly after midnight on February 9, and that the stolen appliances were not in Carter's automobile when the patrolmen stopped him at 1:30 a.m.[4] Assuming *arguendo* that the evidence supported those contentions, we hold that the evidence did not support the refused instruction. Evidence that stolen goods were not in Carter's automobile at 1:30 a.m. did not constitute evidence that Carter was not at the scene of the crime.

### (5)

Counsel learned after entry of the final order that the electronic device had failed to record the proceedings in the judge's chamber during Carter's trial, including testimony of Officer Duff and arguments on motions and instructions. The judge then signed a narrative statement of the proceedings in chambers, which is part of the record

---

[4] Counsel contends that the stolen appliances were too large to fit in the trunk of Carter's automobile. He argues, therefore, that the appliances would have been plainly visible if they were inside the automobile. Yet the patrolmen saw no appliances.

before us. The record does not disclose that counsel made any objection to this narrative statement in the trial court on the ground that it was incomplete or inaccurate.

Counsel contends that Carter should be granted a new trial because the electronic device did not record all proceedings. *Houghtaling* v. *Commonwealth*, 209 Va. 309, 163 S.E.2d 560, decided today, disposes of that contention.

*Affirmed.*