STATE v. DEAN DALE BAGLEY.

175 N. W. (2d) 448.

February 20, 1970—No. 41491.

*Keith D. Kennedy,* for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from a judgment of conviction of the offense of unlawful retention of property of another pursuant to Minn. St. 609.52, subd. 2(1).

On February 13, 1968, the grand jury of Ramsey County, Minnesota, returned an indictment charging defendant in one count with three violations of § 609.52, subd. 2(1), substantially as follows: On or about December 5 and 6, 1967, at St. Paul, defendant intentionally and without claim of right and without the consent of the owner, O. A. Finney, retained movable property as described of the value of not more than $100, with the intent to deprive Finney permanently of possession of the property; intentionally and without claim of right and without the consent of the owner, Gerhard Johnson, retained movable property as described of the value of more than $100 but not more than $2,500, with the intent to deprive Johnson permanently of the possession of the property; and intentionally and without claim of right and without the consent of the owner, Mrs. Violet Nelson, retained movable property as described of the value of more than $100 but not more than $2,500, with the intent to deprive Mrs. Nelson

permanently of the possession of the property, all of the property mentioned being of a total value of more than $2,500.

Section 609.52, subd. 2(1), provides in pertinent part as follows:

"Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

"(1) Intentionally and without claim of right * * * retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of the property."

Section 609.52, subd. 3, provides in pertinent part as follows:

"Whoever commits theft may be sentenced as follows:

"(1) To imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both, if the value of the property or services stolen exceeds $2,500; or

"(2) To imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the value of the property or services is more than $100 but not more than $2,500."

Section 609.52, subd. 3(5), provides:

"In all other cases where the value of the property or services is $100 or less, to imprisonment for not more than 90 days or to payment of a fine of not more than $100, provided, however, in any prosecution under clause (1), clause (2), clause (3) (a) and (c), and clause (4) of subdivision 2 the value of the money or property received by the defendant in violation of any one or more of the above provisions within any six month period may be aggregated and the defendant charged accordingly in applying the provisions of this subdivision."

A demurrer to the indictment was disallowed and at that time the district court judge entered a plea of not guilty for defendant on March 28, 1968.

Defendant on April 15, 1968, filed a motion to suppress and

for return of property obtained under search warrants executed at 1434 Wellesley Avenue, St. Paul, on December 5 and 6, 1967. That motion was denied. On May 17, 1968, defendant was found guilty by a jury of the crime of theft of property of the value of more than $100 but not more than $2,500. Defendant was sentenced to an indeterminate term in the State Prison.

The state's testimony at the trial revealed the following facts: The Arthur E. Thom Real Estate Company, through its agent, Alvin A. Bucher, leased a house at 1434 Wellesley Avenue, St. Paul, to defendant on June 19, 1967, for one year. Bucher had last spoken with defendant about a week and a half to two weeks before May 15, 1968, and had received rent from defendant on February 14, 1968. Bucher could not recall whether he had seen defendant in October, November, or December of 1967.

On December 5, 1967, Robert M. Lee, a sergeant with the St. Paul Police Department, together with other officers, armed with a search warrant, went to the dwelling at 1434 Wellesley Avenue about 3:30 p. m., knocked at the front door, received no reply, and after waiting a minute or two entered the front room of the house. A woman and her two children were present in the house. The mother was furnished with a copy of the search warrant and the officers began their search and seizure.

The officers seized a United States half dime dated 1852 or 1854, a United States two-cent piece dated 1852 or 1854, and three United States mint sets on which there were no distinguishing marks or characteristics. In addition, Sergeant Lee seized five silver dollars, two ring boxes, on which there were no distinguishing marks or characteristics, an Anson desk set, and items of women's clothing. Other items were seized which were not enumerated in the search warrant, although such items were described by one of the officers as matching the description of items taken in a burglary reported to his agency.

Sergeant Lee, having obtained another search warrant, returned to 1434 Wellesley Avenue about 5:30 p. m. December 6, 1967, accompanied by Detective Leroy Thielen, other police of-

ficials, O. A. Finney of Ellendale, North Dakota, and Mr. Johnson from Deer River, Minnesota. On this occasion the officers entered the building through the living room after removing a storm window, found no one at home, and seized items consisting of a Canadian $1 bill, two silver-certificate $1 bills, and a manikin. After the officers had been in the house for about 20 minutes, two small children and a woman identified as Mrs. Jan Bagley arrived. Sergeant Lee left copies of the search warrant and copies of the inventory of items seized with Mrs. Bagley.

Detective Thielen, who assisted in the seizures on December 5, 1967, at 1434 Wellesley, seized a desk set and two skirts, none of which were described in the search warrant.

Ora A. Finney testified that on August 10, 1967, his Ellendale, North Dakota, jewelry store was broken into and watches, diamonds, men's and women's jewelry, and coins and cash were taken. Finney identified two coins, introduced as exhibits, as his. The value of the half dime purportedly was $5 or $6, and the two-cent piece was worth approximately $20. Finney testified that he had had sets like the United States mint sets. He was not asked, however, whether he had ever owned the sets which had been seized. He had bought two mint sets for $5 each and one set had been a gift. As to the ring boxes, Finney said he had had boxes like them. He also testified he had carried merchandise like an Anson desk set. As to the two dollar bills, Finney said he had had two bills like them, of which hundreds of thousands had been issued. He was not asked if he had ever owned an Anson desk set and the two dollar bills.

Gerhard Johnson testified that his Deer River, Minnesota, clothing store was burglarized of ladies' and men's clothing on or about November 29, 1967. Johnson was shown a shift dress, a sweater, and lingerie, and testified that these items were the same as items he had had in his store, but he could not say they were his or the same ones he had had. The only exhibit he identified as his was a manikin. All of these items had been seized December 6, 1967, under the second search warrant. For items

similar to the dress, sweater, and lingerie, Johnson had paid $11.75, $5.98, and $10.98, respectively.

Mrs. Violet Nelson, owner of the Mode Shop in Duluth, testified that her shop was burglarized on November 16, 1967. She identified as hers three blouses and two skirts, whose aggregate replacement value was $35.57. There were no marks or characteristics on other items seized to indicate that they were ever in her possession, but they were similar to items she had had in her store. These items had been seized on December 5, 1967, from 1434 Wellesley, but were not described in the search warrant.

■ Defendant urges error in the findings of the jury with respect to three elements of the offense charged: (1) Whether defendant retained possession of the property; (2) whether such possession was with intent to deprive the owners permanently of possession thereof; and (3) whether the aggregate value of the property was in excess of $100.

Where exceptions have not been taken to the court's instructions to the jury, the jury's findings will be respected on appeal where supported by the evidence. See, State v. Thompson, 273 Minn. 1, 36, 139 N. W. (2d) 490, 515, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. (2d) 56. We are governed by the rule that on appeal from a conviction this court must take the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved anything which contradicted their testimony. State v. Thompson, *supra.* Certainly defendant's possession of the property may have been reasonably inferred by the jury from the evidence produced at the trial. This evidence may be summarized as follows:

"(a)   Defendant entered into a one year lease of the premises at 1434 Wellesley on June 19, 1967.

"(b)   Defendant was observed by a police officer entering and leaving 1434 Wellesley on numerous occasions during August, September and up until late October, 1967.

"(c) Defendant paid rent on the premises at 1434 Wellesley on February 14, 1968.

"(d) Defendant was called and talked to on the phone at 1434 Wellesley a few weeks prior to May 14, 1968.

"(e) Defendant was arrested a few blocks from the premises at 1434 Wellesley on January 18, 1968.

"(f) A woman known to police as, and who identified herself as, Mrs. Jan Bagley was in the house at 1434 Wellesley in the company of two children when search warrants were executed on December 5 and 6, 1967.

"(g) On December 5 and 6 the property of which defendant is accused of having in his possession was seized from 1434 Wellesley."

These facts, when taken together, furnish ample proof to sustain the finding of the jury that defendant was in actual possession of the goods at 1434 Wellesley Avenue on December 5 and 6, 1967.

■ Although it has been held by this court that the quality of possession required to satisfy the theft or larceny statute is personal and exclusive possession in the defendant and other participants in the crime, State v. Zoff, 196 Minn. 382, 265 N. W. 34, it has also been held that "personal" possession does not require that the property be actually in defendant's hands or on his person. In State v. Foster, 268 N. C. 480, 487, 151 S. E. (2d) 62, 67, the North Carolina Supreme Court stated:

"It is not always necessary that the stolen property should have been actually in the hands or on the person of the accused, it being sufficient if the property was under his exclusive personal control."

See, also, State v. Harrington, 176 N. C. 716, 96 S. E. 892.

In Graham v. State, 6 Md. App. 458, 251 A. (2d) 616, stolen goods were found in a bedroom in defendant's home. The conviction was sustained even though defendant's wife had equal access to the goods. In accord with this position is Bunter v.

United States (D. C. Ct. App.) 245 A. (2d) 839, in which a conviction was sustained where goods were found under the defendant's bed in his room, to which others had access. See, also, People v. Masters, 30 App. Div. (2d) 723, 291 N. Y. S. (2d) 230.

In the case at bar the goods were found throughout 1434 Wellesley Avenue, a home which, the evidence shows, defendant was sharing with Mrs. Jan Bagley at the relevant time. The fact that Mrs. Bagley had access to the goods is not fatal, since conviction can rest on joint possession. People v. Hyde, 97 Ill. App. (2d) 43, 239 N. E. (2d) 466; People v. Wheeler, 5 Ill. (2d) 474, 126 N. E. (2d) 228; Carter v. Commonwealth, 209 Va. 317, 163 S. E. (2d) 589, certiorari denied, 394 U. S. 991, 89 S. Ct. 1479, 22 L. ed. (2d) 766.

■ If defendant was in possession of the stolen goods, it is not difficult to infer that he possessed them with the intent to permanently deprive their owners of their possession. It is well established that unexplained possession of stolen property within a reasonable time after a burglary or theft will in and of itself be sufficient to sustain a conviction. See, State v. Jatal, 152 Minn. 262, 188 N. W. 284; State v. Anderson, 155 Minn. 132, 192 N. W. 934. In the instant case, burglaries had occurred on August 10, November 16, and November 29, 1967, all within a reasonable time of the discovery of the goods on December 5 and 6, 1967.

■ In reviewing the list of items found in the search of the premises at 1434 Wellesley, the jury might well be justified in inferring that the value of the property exceeded $100 in value. Defendant rests on the proposition that the jury could only reasonably have considered the goods positively identified as coming from the three stores in arriving at the total value taken. This argument, we think, is without merit. The conclusion that all the "similar" items also were stolen is well-nigh inescapable. It was only reasonable under the circumstances for the jury to make the inferences that it did as to value.

■ Defendant contends that the information contained in the affidavit executed by Sergeant Floyd Baker to support his

application for the search warrant issued December 4, 1967, did not furnish probable cause for its issuance.[1] He also contends that the search warrant issued December 6 and the search and seizure conducted under it were invalid because the basis for that search was the information acquired in the execution of the previous search warrant.

In Miller v. Sigler (8 Cir.) 353 F. (2d) 424, 427, certiorari denied, 384 U. S. 980, 86 S. Ct. 1879, 16 L. ed. (2d) 690, the court

---

[1] The affidavit states in part: "Floyd Baker, being duly sworn, on oath alleges and makes complaint in writing to the above-named Court [Municipal Court, St. Paul] and says that he is a peace officer in the County of Ramsey, State of Minnesota, employed by the City of Saint Paul, as a Sergeant.

"That affiant is informed and verily believes that on or about the 10th day of August 1967 the Finney Jewelry Store, Ellendale, North Dakota was burglarized of personal property as set forth in State's Exhibit A attached hereto and made a part hereof.

"That on November 23, 1967, a Dennis Russell was arrested in Saint Paul, Minnesota for burglary and in his possession at the time of his arrest was a 4-10 gauge sawed-off shotgun, H & R, Serial Number 46305 which was later identified as one of the guns taken in the Ellendale Jewelry Store burglary.

"Russell advised Saint Paul Police that he had purchased the sawed-off shotgun from a person who lives at 753 York Street and from a group of photographs he selected a picture of Jack O'Brien, Saint Paul Police Identification Number 47609 as the person who sold him the gun.

"Saint Paul Police during the months of August, September and October conducted a surveillance of a known ring of burglars which included Jack O'Brien, 753 York and Dean Dale Bagley, also known as Dale Dean Bagley, who has been living since July 1967 at 1434 Wellesley Avenue, Saint Paul with one Janette Norell.

"On a number of occasions police have observed Dean Dale Bagley leaving the residence at 1434 Wellesley in the company of Jack O'Brien using a 1958 DeSoto, Minnesota License Number MBS8329, which is registered to Dean Bagley, 773 Capitol Heights (the address of his mother); a 1955 Buick, South Dakota License Number 1-31075, which is registered to Ernest Gieger, 315 1/2 South Main Street, Sioux Falls, South Dakota (the title card for this car was never claimed at the address to which it was mailed); and a 1956 Ford Pick-Up Truck, Minnesota

said that " 'probable cause' which would justify the issuance of a search warrant is much less than the 'probable cause' required to legally arrest without a warrant." In accordance with the foregoing principles, we must weigh the facts alleged in the affidavit of December 4, 1967.

The affidavit of Sergeant Baker establishes that the St. Paul police and other investigators involved in the surveillance of 1434 Wellesley Avenue knew that one Jack O'Brien, 753 York, St.

---

License Number YU 3043, registered to John R. Olson, 272 Charles Avenue, Saint Paul (a nonexistent address). Dean Bagley is also known to use a 1966 White, Four-Door Chevrolet, Minnesota License Number 4 CE 481, registered to Jeanette Norell, who, at the time she purchased the car, gave her address as 753 York.

"The Saint Paul police surveillance was conducted in conjunction with the Minnesota Bureau of Criminal Apprehension and the Federal Bureau of Investigation in investigation of a large number of burglaries in out-state Minnesota, North Dakota, South Dakota, Wisconsin and Iowa.

"Dean Bagley and Jack O'Brien were observed by police leaving 1434 Wellesley Avenue, Saint Paul at 8:45 P. M. on August 7, 1967 with thermos bottles and were not seen again at that address for several days.

"That affiant has good reason to believe, and does believe, that said personal property or things are now concealed or will be concealed in the house, garage and any appurtenant buildings and the premises at 1434 Wellesley Avenue in the City of Saint Paul, County of Ramsey, State of Minnesota. That affiant further believes that to prevent loss, destruction or removal of the property the search must necessarily be made in the nighttime.

"That said affiant's Petition for search warrant is made upon (information received from other law enforcement agents) AND (information resulting from his own investigation).

"WHEREFORE, SAID AFFIANT PRAYS that a search warrant be issued, directing, authorizing and commanding Sergeant Robert Lee, a peace officer in the County of Ramsey, State of Minnesota, to enter into the house, garage and any appurtenant buildings and the premises at 1434 Wellesley Avenue and search for the following property or things, to-wit:

"Property set forth in Exhibit B attached hereto."

Paul, and defendant, residing at 1434 Wellesley, were frequently seen together and that in August 1967 they left together for several days, during which time the Ellendale, North Dakota, burglary occurred; that later one Dennis Russell was arrested in St. Paul on burglary charges and then had in his possession a shotgun he had purchased from Jack O'Brien, the gun later being identified as one of the guns taken in the Ellendale jewelry store burglary.

The trial court held the issuance of the search warrants in December 1967 was valid and that the affidavit accompanying the application for their issuance contained sufficient facts from which a magistrate could conclude there was probable cause for the search. The determination that there was probable cause to conduct a search was made by a neutral and detached magistrate and not by a police officer. See, State v. Burch, 284 Minn. 300, 170 N. W. (2d) 543.

There are no set rules or established formulae for determining probable cause or reasonable cause. Each case must be determined upon its own facts. Two recent Minnesota cases dealing with this problem are State v. McConoughey, 282 Minn. 161, 163 N. W. (2d) 568, and State v. Suess, 280 Minn. 308, 159 N. W. (2d) 180. This court in the McConoughey case quoted as follows from United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. ed. (2d) 684 (282 Minn. 167, 163 N. W. [2d] 572):

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. * * * A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

We also said in the Suess case (280 Minn. 308, 312, 159 N. W. [2d] 180, 182):

"Where an affidavit for a search warrant, pursuant to Minn. St. 626.07 (2, 5), details the underlying circumstances upon which is based a belief that probable cause exists, including the source of reliable information, and a magistrate has found probable cause, courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner; the test of probable cause is met if the affidavit sets forth competent evidence sufficient to lead a reasonably prudent man to believe that there is a basis for the search.

\* \* \* \* \*

"\* \* \* Other courts, in considering the question of reasonableness for a search warrant, have expressed the same view to the effect that the test of probable cause is met if the affidavit sets forth competent evidence sufficient to lead a reasonably prudent man to believe that there is a basis for the search."

Under the circumstances, the magistrate was warranted in finding that probable cause existed for issuing the search warrants. Any other conclusion by that official would have been short of the reasonable and practical approach to the interpreting and testing of the application and the supporting affidavit required by this and other courts. Therefore, since the warrants were properly issued, any objections or motions to suppress for lack of probable cause are without merit.

■ It is argued by defendant that items seized under the warrants were not described in the search warrants, and accordingly what could have properly been taken was limited to those items described, with nothing left to the discretion of the officers executing the warrants. It is clear from the record that the items seized in addition to the items described were similar to items which the owners of the identified items had had on hand in the various stores involved. Moreover, in each instance the described

items which were identified by the owners inescapably connected defendant with each of the burglaries.

In Abel v. United States, 362 U. S. 217, 238, 80 S. Ct. 683, 697, 4 L. ed. (2d) 668, 686, Mr. Justice Frankfurter, writing for a divided court, said:

"* * * When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."

While U. S. Const. Amend. IV provides that the warrant must particularly describe the things to be seized, it is nevertheless well established that, given a lawful search, some things may be seized in connection therewith that are not described in the warrant. See, Johnson v. United States, 110 App. D. C. 351, 293 F. (2d) 539; United States v. Howell (3 Cir.) 240 F. (2d) 149; Bryant v. United States (5 Cir.) 252 F. (2d) 746; Kelly v. United States (5 Cir.) 197 F. (2d) 162; United States v. Russo (E. D. Pa.) 250 F. Supp. 55; Gurleski v. United States (5 Cir.) 405 F. (2d) 253, certiorari denied, 395 U. S. 981, 89 S. Ct. 2140, 23 L. ed. (2d) 769.

■ It will be noted that many of these decisions permit the introduction of evidence other than that for which the officers were searching, on the ground that the other evidence was contraband. The court below correctly ruled that it is proper to seize items not mentioned in the search warrant, especially where such items are stolen property or contraband.

The other issues raised by defendant are without merit. We conclude that the introduction of the evidence beyond that named in the warrant was proper and that the findings of the jury in the court below were adequately supported by the evidence, establishing guilt beyond a reasonable doubt.

Affirmed.