COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


LEROY NATHANIEL SMITH

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1976-98-3          JUDGE JAMES W. BENTON, JR.
                                         DECEMBER 28, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                    Charles J. Strauss, Judge

          Albert L. Shaw for appellant.

          Shelly R. James, Assistant Attorney General
          (Mark L. Earley, Attorney General; Ruth M.
          McKeaney, Assistant Attorney General, on
          brief), for appellee.


     A jury convicted Leroy Nathaniel Smith of six burglaries,

three grand larcenies, and three petit larcenies.  Smith contends

the evidence was insufficient to prove he committed five of the

burglaries, two of the grand larcenies, and the three petit

larcenies.  He does not contest one burglary and one grand larceny

conviction.  For the reasons that follow, we affirm Smith's

convictions.

                              I.

     "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

inferences fairly deducible therefrom.'"  Archer v.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)

(citation omitted).  So viewed, the evidence established that

six homes were burglarized in Pittsylvania County between

November 25 and December 4, 1997.  On November 25, 1997, the

home of Robert Lindsay and his daughter was burglarized.  When

Lindsay returned home that afternoon, he saw narrow bicycle

tracks leading from the road through his gravel driveway and his

muddy yard to the carport.  The door to his home had been pried

open with a tool.  The burglar had taken coins, $220 in cash, a

high school class ring, four gold rings, and other jewelry.

During the trial, the Lindsays identified the class ring and the

four gold rings stolen from their home.

On December 1, 1997, Larry and Pamela Kincaid's home was

burglarized.  The burglar pried open the carport door with a

tool and took jewelry, coins, a wallet with credit cards, and a

.38 Smith & Wesson handgun.  During the trial, Pamela Kincaid

identified the handgun stolen from her home and testified that

three missing gold necklaces were each valued at one hundred

dollars.

Also on December 1, the home of Barry Carter was

burglarized.  The burglar removed a radio and a camcorder valued

at $1,000.  Smith does not contest the convictions for burglary

and grand larceny related to Carter's home.

-

On December 3, 1997, the home of Evelyn Woodson was burglarized.  The burglar pried open the front door with a tool and took coins, several two-dollar bills, a gold necklace, and a .38 Smith & Wesson handgun valued at $294.  During the trial, Woodson's brother identified a photograph of the two-dollar bills that were stolen and testified that he had earlier identified the bills because of large creases caused by his folding of the bills. Woodson also earlier identified the necklace the police recovered and, at trial, identified a photograph of the necklace.

On December 4, 1997, the home of Joan Tarpley-Robinson was burglarized.  The burglar pried open the basement door with a tool and took coins and a radio.  Before trial, Tarpley-Robinson identified the radio the police recovered and, during the trial, she identified a photograph of the radio.

Also, on December 4, 1997, Kenneth and Lori Oakes' home was burglarized.  After prying open the front door with a tool, the burglar took a 9mm Astra handgun, a holster and ammunition, all valued at $400, six rings valued in excess of $1,000, a watch, and some loose change.  At trial, Kenneth Oakes identified the handgun, clip, holster, ammunition, and a ring that were stolen from his home and recovered by the police.  Oakes' wife identified the five rings that were stolen from their home and recovered by the police.

On the afternoon of December 4, 1997, Major Gary Goodson and Sergeant Donald Motley were patrolling an area of the county where

-

several burglaries had occurred when they saw Smith carrying a blue sack and walking a ten-speed bicycle.  They informed Smith that he matched the description of an individual involved in several burglaries and asked him for identification.  Smith identified himself and allowed Goodson to look in his sack.  When Goodson opened it, he saw a pair of gloves, a screwdriver, and a large number of coins.

Expressing a concern that people would see him talking with the police, Smith asked if they could go to his residence.  The officers agreed and followed Smith to a nearby residential trailer.  As they arrived at the trailer, Deputy Paul Burke pulled into the driveway.  With Smith's consent, Motley and Burke searched the residence.  When the officers asked Smith in what part of the trailer he lived, he told them the master bedroom.

In the master bedroom, the officers found the camcorder taken from the Carters' home, a ski mask, screwdriver, two ice picks, a putty knife, a large assortment of coins, and coin wrappers.  The officers then arrested Smith and searched him. During the search, the officers saw two watches and a ring but did not confiscate them.

Motley searched the sack again and found the gold necklace stolen from the Woodsons' residence, the radio stolen earlier that day from the Tarpley-Robinsons' residence, and the 9mm Astra handgun, clip, and ammunition stolen earlier that day from

-

the Oakes' residence. In the bathroom, which Smith used while the officers were in the trailer, Goodson recovered the .38 Smith & Wesson handgun stolen from the Kincaids' residence hidden in a trash can.

At the county jail, Burke searched Smith and recovered from his wallet the four two-dollar bills that had been taken from the Woodsons' residence. Burke later searched the seat in the rear of Burke's vehicle where Smith had been sitting and found five of the six rings which had been taken from the Oakes' residence. After his arrest, Smith was detained in the jail, where he sold to an inmate one of the rings stolen from the Oakes' residence. The police later recovered the ring from the inmate.

Smith recorded a statement for the police and admitted possessing the Kincaids' .38 Smith & Wesson handgun. Smith stated that he had taken the gun on Sunday, November 30, 1997, from some "crackheads."

Linda Goggins, who also occupied the trailer searched by police, later summoned Burke to the trailer. When Burke arrived at the trailer, Goggins gave him the class ring and the four gold rings that had been stolen from the Lindsays' residence and other jewelry. At trial, Goggins testified that she had never seen the class ring and the four gold rings before she found them in the master bedroom of the trailer. In addition, Goggins' daughter testified that she had never seen the jewelry.

-

Upon consideration of all the evidence, the jury convicted Smith of six burglaries, three grand larcenies, and three petit larcenies. On appeal, Smith does not contest the convictions for the burglary and grand larceny at Carter's residence; however, he contends the evidence is insufficient to prove the other offenses.

## II.

It is well established that "the unexplained possession of recently stolen goods permits an inference of larceny by the possessor." Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987). Similarly, a prima facie case of burglary is established by the following:

> (1) proving that goods were stolen from a house which was broken into; (2) justifying the inference that both offenses were committed at the same time, by the same person, as part of the same criminal enterprise; and (3) proving that the goods were found soon thereafter in the possession of the accused.

Id. Although "the unexplained possession of recently stolen property creates a presumption of guilt, . . . possession must be exclusive on the part of the accused." Leebrick v. Commonwealth, 198 Va. 365, 367, 94 S.E.2d 212, 214 (1956). "[T]he evidence must reveal that the accused was consciously asserting at least a possessory interest in or exercising dominion over the stolen property." Ferrell v. Commonwealth, 11 Va. App. 380, 388, 399 S.E.2d 614, 618 (1990); see also Nelson

-

v. Commonwealth, 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991).

"Guilt of breaking and entering a building may be established by circumstantial evidence; eyewitnesses are not required." Hope v. Commonwealth, 10 Va. App. 381, 385, 392 S.E.2d 830, 833 (1990) (en banc) (citation omitted). Moreover, if an accused is found in possession of recently stolen goods, the trier of fact may infer guilt if the possession is not explained credibly or if the possession is falsely denied. See Carter v. Commonwealth, 209 Va. 317, 323-24, 163 S.E.2d 589, 594 (1968).

The testimony of the Commonwealth's witnesses proved that someone broke into each residence and stole items. That proof justified an inference by the fact finder that the offenses were committed at the same time, by the same person, as part of the same criminal enterprise. See Bright, 4 Va. App. at 251, 356 S.E.2d at 444.

(A)

Lindsay observed narrow bicycle tire tracks on his property. When the police apprehended Smith, he had a bicycle and was carrying recently stolen items. He also possessed tools that could have been used to break into a house. Nine days after the burglary at the Lindsays' residence, the Lindsays' class ring and four gold rings were recovered from the master

-

bedroom Smith said he occupied.  Smith offered no explanation for his possession of these items.

> In order for the presumption to arise, the possession must be exclusive, but "[o]ne can be in exclusive possession of an item when he jointly possesses it with another," as long as "the accused was consciously asserting at least a possessory interest in the stolen property or was exercising dominion over [it]."

Archer v. Commonwealth, 26 Va. App. 1, 13, 492 S.E.2d 826, 832 (1997) (citation omitted).

Neither Goggins nor her daughter had ever seen the jewelry before Goggins delivered it to police and did not know from where it came.  Under these circumstances, the fact finder could infer beyond a reasonable doubt that Smith had exclusive possession of the Lindsays' jewelry and exercised dominion over it.

The combination of Smith's unexplained possession of the items recently stolen from the Lindsays' home and the circumstantial evidence could lead the fact finder to infer beyond a reasonable doubt that Smith broke into the Lindsays' home and stole the items.  See Carter, 209 Va. at 323-24, 163 S.E.2d at 594.  Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Smith was guilty of the burglary of the Lindsays' home and the grand larceny of the items stolen from their home.

(B)

The Kincaids' handgun was recovered three days after the burglary, hidden in a bathroom trash can in the trailer occupied by Smith. When confronted with the gun, Smith admitted possessing it, but indicated he had obtained it on Sunday, November 30, 1997, from some "crackheads." The evidence proved, however, that the burglary did not take place until Monday, December 1, 1997. Based upon these inconsistencies, the fact finder was entitled to reject Smith's explanation of his possession of the gun. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Based on the combination of circumstantial evidence, Smith's recent possession of the gun stolen from the Kincaids' home, and his incredible explanation for that possession, the fact finder could infer beyond a reasonable doubt that Smith broke into the Kincaids' home and stole the gun. See Carter, 209 Va. at 323-24, 163 S.E.2d at 594. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Smith was guilty of the burglary of the Kincaids' home and the petit larceny of the items stolen from their home.

-

One day after the burglary, the police recovered the Woodsons' necklace from Smith's sack and their two-dollar bills from his wallet. "When an accused is found in possession of goods of a type recently stolen, strict identity of the goods is not required." Henderson v. Commonwealth, 215 Va. 811, 812-13, 213 S.E.2d 782, 783 (1975). All of the circumstances, considered together, permitted the fact finder to infer that the gold necklace found in Smith's sack and the two-dollar bills found in his wallet were stolen from the Woodsons' home. The fact finder was entitled to reject Smith's explanation for possession of the two-dollar bills, see Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732, and Smith provided no explanation for his possession of the Woodsons' necklace.

Based upon circumstantial evidence and the incredible evidence concerning Smith's recent possession of the Woodsons' stolen items, the fact finder could infer beyond a reasonable doubt that Smith broke into the Woodsons' home and stole the property. See Carter, 209 Va. at 323-24, 163 S.E.2d at 594. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Smith was guilty of the burglary of the Woodsons' home and the petit larceny of the items stolen from the home.

-

(D)

The police recovered the radio within hours of the burglary of Tarpley-Robinson's home. It was in the sack that Smith was carrying. Smith offered no explanation for his possession of the radio. We find no merit to Smith's argument that the trial judge should have granted his motion to strike the indictment because the Commonwealth failed to amend the indictment to reflect that property belonging to Tarpley-Robinson's daughter was stolen. The Commonwealth's evidence proved that at least thirty dollars worth of coins were stolen at the same time the radio was stolen. The value of the radio was not relevant in establishing the petit larceny; rather, the combination of Smith's unexplained possession of it within hours after it was stolen and other circumstantial evidence was sufficient to prove he broke and entered the Tarpley-Robinsons' home and stole the property. See Carter, 209 Va. at 323-24, 163 S.E.2d at 594. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Smith was guilty of the burglary of the Tarpley-Robinsons' home and the petit larceny of property.

(E)

Within hours of the burglary, the police recovered the Oakes' handgun from Smith's sack. The Oakes' jewelry was recovered from the seat of the vehicle in which Smith was transported to the jail after his arrest. Smith sold one of the Oakes' rings to an inmate at the jail. The fact finder was

-

entitled to reject Smith's explanation for his possession of the Oakes' handgun, see Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732, and Smith offered no explanation for his possession of the Oakes' rings.

Based upon Smith's lack of a credible explanation for his possession of the gun, his unexplained possession of the rings, and the recency of the events, the fact finder could infer beyond a reasonable doubt that Smith broke into the Oakes' home and stole property, having a value in excess of $200. See Carter, 209 Va. at 323-24, 163 S.E.2d at 594. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Smith was guilty of the burglary of the Oakes' home and the grand larceny of the items stolen from their home.

For the foregoing reasons, we affirm the convictions.

Affirmed.

-