**R. J. FANELLI, Herbert C. Howard, and Joe T. Moore, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 3, 1967.

As Modified on Denial or Rehearing Oct. 20, 1967.

Daniel B. Boone, William S. Bowman, S. J. Stallings, R. D. McAfee, Richard D. Remmers, Louisville, for appellants.

Edwin A. Schroering, Jr., Louisville, Robert Matthews, Atty. Gen., Lloyd R. Cress, Robert D. Preston, Asst. Attys. Gen., Frankfort, for appellee.

HILL, Judge.

Appellants were tried jointly under six indictments, two against each appellant. The two indictments against Herbert C. Howard, an attorney, contained nine counts each; one indictment was drawn under KRS 61.190, providing a penalty for "(a)ny public officer who shall receive, directly or indirectly, any interest, profits or perquisites arising from the use or loan of public funds in his hands, or to be raised through his agency," and the other for accepting a bribe in violation of KRS 432.350(2).

Appellants Fanelli and Moore were both charged in two indictments containing ten counts each under the two statutes referred to above.

The jury trial resulted in the conviction of the three appellants on all counts. Appellant Howard was assessed fines of $900 on each count under one of the indictments, making a total of $9,000, and given ten years in prison under the other indictment, one-half of which was ordered to run concurrently with the other half. Appellants Fanelli and Moore were fined $10,000 each and given ten years' imprisonment in the penitentiary.

The indictments did not charge a conspiracy, but the evidence showed each appellant accepted checks for the following identical amounts, to the penny, on the dates indicated opposite them:

| $ 416.67 | May 15, 1961 |
|---|---|
| 583.33 | May 23, 1961 |
| 150.00 | June 23, 1961 |
| 166.66 | July 18, 1961 |
| 175.83 | July 20, 1961 |
| 200.00 | July 22, 1961 |
| 233.33 | July 28, 1961 |
| 300.00 | August 5, 1961 |
| 3000.00 | September 21, 1961 |
| 3000.00 | December 8, 1961 |

At the time of the acceptance of the above amounts, appellants composed the three-member Commission of the Middletown Water District.

Three separate briefs and a reply brief have been filed on behalf of appellants. Appellee has filed one brief in which it attempts to answer the numerous questions raised in appellants' briefs. We shall take up the questions presented in the order in which they are answered in appellee's brief.

Appellant Fanelli first argues that an admonition given by the court, with reference to the limited purpose for which the jury could consider the numerous checks introduced in evidence, was insufficient and its effectiveness destroyed by the concluding comment of the trial judge. Appellant

Howard contends that the trial judge made numerous prejudicial comments during the trial that deprived him of a fair trial.

Approximately thirty canceled checks payable to appellants were introduced, to which objection was made by the appellants whose names did not appear on the particular check being introduced. The trial judge gave the following admonition:

"By the Court: Ladies and Gentlemen * * * if Mr. Fanelli's names appears on a check it is not evidence for or against Mr. Moore or Mr. Howard, and neither if Mr. Moore's name appears on a check and endorsed by him, it is not evidence either for or against Mr. Howard or Mr. Fanelli. I don't think this is really necessary but insofar as repeated objections by counsel which I was overruling for the time being, I think it is my duty to clear up that problem."

It is concluded the admonition was sufficient. Furthermore, there was no objection to the admonition or motion to set aside the swearing of the jury and continue the case. We do not think the reference to objections was sufficient to faze the fair-minded intelligence which we must assume the jury possessed.

Four pages of appellant Howard's brief are devoted to the proposition that the trial court made other improper and prejudicial comments during the trial. Numerous instances are quoted, which we will not set out herein but simply say that they amount to the expression of some impatience on the part of the court. It is to be noted that the attorneys and their objections were numerous and perhaps persistent. It may at times be difficult under such circumstances for a trial judge to maintain patience and tolerance, but it is highly desirable that he do so, both to uphold the dignity of the court and to avoid the possibility jurors may be influenced by his comments. We repeat our observations in the preceding paragraph that there was no prejudice to appellants' substantial rights. RCr 9.26.

Appellants all join in questioning the propriety of the ruling of the trial court overruling their separate motions for separate trials. For many years the right to separate trial was absolute under the old Criminal Code Rules (section 237), but under RCr 9.16 the trial court is now given a discretion in ruling upon request for separate trials. See Smith v. Commonwealth Ky., 375 S.W.2d 819 (1964). The right to separate trial was not a common law right or one safeguarded by our Constitution. Koonze v. Commonwealth, Ky., 378 S.W.2d 804 (1964).

In Hoskins v. Commonwealth, Ky., 374 S.W.2d 839 (1964), this court stated the prevailing rule that the mere fact that evidence competent as to one defendant but incompetent as to the other may be introduced is not alone sufficient to establish such prejudice as to require the granting of separate trial. See also Underwood v. Commonwealth, Ky., 390 S.W.2d 635 (1965).

We find no evidence of antagonistic defenses tending to show an abuse of discretion by the trial court in overruling the motions for separate trials.

Appellants claim a violation of KRS 421.225 and section 11 of the Constitution was committed by the commonwealth's attorney when he made the following remarks: "And, Ladies and Gentlemen of the jury, these facts (tracing the funds alleged to have been received by appellants) are uncontradicted. Herbert Howard, R. J. Fanelli, Joe T. Moore, uncontradicted of record." And at another point in the cross-examination of appellants' secretary: "She's not the best evidence. You know who is the best evidence is."

It was held in Schweizer v. State of Tennessee, Tenn., 399 S.W.2d 743 (1966) that: "Argument by Counsel for the State to the fact that the evidence of the State is

uncontradicted is not improper as drawing the attention of the jury to the failure of the defendant to testify." See also Anderson v. Commonwealth, Ky., 353 S.W.2d 381 (1961) certiorari denied 369 U.S. 829, 82 S.Ct. 847, 1 L.Ed.2d 795, certiorari granted 371 U.S. 886, 83 S.Ct. 192, 9 L.Ed. 2d 120.

■ We cannot say that it is reasonably probable that the remarks of the commonwealth's attorney were calculated to call the attention of the jury to the defendants' failure to testify.

Only appellants Howard and Moore contend the evidence was insufficient to support the verdict.

■ There was evidence that appellants were the only members, of the Middletown Water Commission; that they received and endorsed the checks from Sanson, the contractor on Commission projects; that appellants did not charge any inspection fee on projects awarded to Sanson, but did charge eight percent on projects awarded to other contractors; that contracts awarded to Sanson received more prompt consideration than those of other contractors; that Sanson's projects received better water service than other projects; that some of Sanson's bids were missing from the minute book; that appellants received the amounts listed above; and that each defendant received from Sanson an amount equal to the amount received by every other commissioner. This last circumstantial evidence is the most potent and significant of all. Certainly it cannot be said that Sanson made any difference among the appellants; he treated them all alike.

We wonder what answer the computer would give to the question of the probability of three persons claiming to have rendered different services to a concern each receiving nine or ten checks bearing identical dates and amounts to the copper?

Appellant Howard alone maintains that error was committed by the trial court's refusal to discharge the jury because of alleged prejudicial news articles appearing in the local newspapers.

■ The record indicates three articles from a newspaper were filed with the evidence of McAfee, but they do not appear in the record on appeal. Furthermore, the trial judge gave this admonition to the jury:

> "Ladies and Gentlemen of the jury, you are now advised and admonished by the court, that any news items that you may have read in the newspapers regarding this case that you are now sitting in as a juror, you will disregard. You will disregard anything or any item appearing in any newspaper article that you have read since you have been jurors in this case, or even before you became jurors in this case, if you have read any articles or newspaper items concerning this case."

We find no error in connection with this question.

■ Only appellant Howard questions the trial court's "curtailment" of appellants' right to cross-examine the witness Mrs. Bobby Jean Roberts. From a reading of the record, it is readily apparent the alleged "curtailment" involved merely a fair effort on the part of the trial court to have an orderly presentation of the evidence as outlined in RCr 9.42.

■ Appellant Fanelli asserts the Commonwealth did not meet the burden of proof required when it introduced the numerous checks, made payable to persons with names identical to those of the appellants, without proving by a handwriting expert or persons familiar with the signatures of appellants that the signatures of the drawer and the payee on the checks were genuine. This was unnecessary under KRS 422.120 and the case of Herd v. Herd, 293 Ky. 258, 168 S.W.2d 762 (1943). In Sullivan v. Commonwealth, 222 Ky. 771, 2 S.W. 2d 666, the identity of the name is *prima facie* evidence of the identity of the person.

See also Marcum v. Commonwealth, Ky., 411 S.W.2d 461 (1967) decided February 10, 1967, and Foster v. Commonwealth, Ky., 415 S.W.2d 373 (1966) decided October 28, 1966. Anyway there was abundant evidence to identify appellants as the payees of the checks.

■ Appellant Howard assails KRS 61.190 on the ground it is too vague and uncertain to be enforceable. This court found no fault with this statute in A. & W. Equipment Co. v. Carroll, Ky., 377 S.W.2d 895 (1964), although the question of its enforceability was not specifically raised. Furthermore, on a previous appeal of this case in Commonwealth v. Howard, Ky., 379 S.W.2d 475, this court said: "KRS 61.190 and 432.350(2) have for their purpose the protection of public monies and as such should be construed with that worthy purpose in mind. * * * The trial court was in error in dismissing the two indictments."

We find no fault with this statute, which has weathered time and attack since 1893.

■ Objection is made to the testimony of Cecil Davenport, assistant county attorney, relative to the statutes governing water districts. It is said questions of law must be resolved and explained by the court. We find no inconsistency in the explanation of the statute by this witness and that given by the court in its rulings and instructions. We do not mean to countenance this sort of practice, but in this particular setting we are unable to observe any evidence prejudicial to the rights of appellants.

Numerous objections are made to the instructions, but only appellant Moore's objection that the crime was not "defined" and appellant Howard's objection to the failure of the court to give an instruction providing that if the funds were paid Howard for "legal services performed," he should be acquitted are properly preserved for appellate review. Other objections were not properly preserved at the time the instructions were given or in the motion and grounds for a new trial.

■ The instructions described the acts substantially in the language of the two statutes. There was sufficient definition of the offense. See Wharton's Criminal Law and Procedure, Volume 5, section 2098, page 266.

■ Howard's complaint of the failure to instruct the jury to acquit in the event it believed the funds were received by him as "legal service" is without merit for the reason he, Howard, made no such affirmative defense. He did not testify. He did not introduce or prove by any witness that he was the legal representative of Sanson. Also the court instructed the jury to find Howard guilty in the event he received the money "in his capacity" as commissioner of the water district, along with a reasonable doubt instruction. The instructions thus covered the whole law of the case. See Hancock v. Commonwealth, Ky., 262 S.W. 2d 670 (1953) and Reynolds v. Commonwealth, Ky., 257 S.W.2d 514 (1953).

■ Appellant Howard argues that the evidence was insufficient to convict under KRS 432.350(2). We have heretofore discussed the sufficiency of the evidence to convict under KRS 61.190. The same evidence was sufficient to convict under KRS 432.350(2).

■ Appellant Howard finally states "the lower court erred in treating each count of each indictment as a separate offense, instead of treating each count as a part of one single offense." He goes on to state:

"With respect to KRS 61.190, it is clear that it is only one offense to receive many 'profits or perquisites.' The statute does not create a separate offense for each profit or each perquisite. * * * The same reasoning may be applied to the instructions concerning KRS 432.350 (2). The word 'bribe' means the total amount of money received for each act of commission or omission. According to the evidence below, there were only three construction contracts between the

Middletown Water District and Mr. Sanson. Even if the proof had supported a bribe, there could not have been more than one bribe (or many portions of one bribe) for each job awarded to Mr. Sanson."

The argument rests on the premise that there could only have been one basic "deal" between the appellants and Sanson, under which he was to pay a "kick-back" a rebate in a fixed sum or percentage simply in return for being awarded the contracts. We think that the fact that the checks were in varied amounts and were paid over a period of some six months, and the fact that Sanson's work was subject to periodic inspections and that he had to meet certain requirements at various stages of the work in order to receive progress payments, warranted conclusions to be drawn that there were as many as nine separate bribes and nine separate instances of receiving profits or perquisites from the use of public funds.

The judgment is affirmed as to all three appellants.

All concur.