Troy REEVES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 22, 1971.

Lowell W. Lundy, Barbourville, Terry E. Forcht, Paul Braden, Corbin, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Troy Reeves was indicted for the willful murder of James Lee Johnson. Upon trial by jury, he was found guilty of voluntary manslaughter and his punishment fixed at imprisonment for twenty-one years. He seeks reversal of that conviction and assigns various charges of error, all of which relate to his claim that the trial court improperly admitted in evidence an incriminating confession. A related assignment of error deals with the failure of the trial court to admonish the jury concerning the confession.

The factual background of this bizarre and shocking affair is succinctly expressed in the challenged confession, which is quoted in full as follows:

"My name is TROY REEVES, I am twenty years of age, single and I was living with my parents at Frakes, Kentucky.

On Friday morning December 13, 1968, CLAUDE DIXON, DEWEY PARTIN, LARRY THACKER and JAMES JOHNSON came to my house and got me and we drove over in Tennessee in DEWEY PARTIN's car.

When we got out of the car CLAUDE DIXON drew a knife on me and said, 'You carry the meat', which I did. When we got to the cabin LARRY THACKER threw a gun on me and told me to cook the meat.

DEWEY PARTIN left to take his car back home. LARRY THACKER and CLAUDE DIXON went to bed. I shot one of them with a shotgun and the other with a .22 and killed them both. When DEWEY PARTIN came back he had a gun and he started to point it at me and said, 'Where are the boys?', and I thought he was going to shoot me and I shot him; then JAMES JOHNSON and I left together and went over near JAMES's home and he swung to hit me with a shotgun and I fired on him. I took both guns and went home.

Saturday officers came looking for me and I ran off. After they left I came back to the house and about 5:00 they were coming toward the house again, I ran off again. One of them started tracking me and around 7:30 or 8:00 I came

back to the house, got the .22 automatic and got in the toilet. After I saw this man come out of the woods I stepped out of the toilet and hollored (sic), 'Halt', and this man started to draw something, I thought a gun, and I started shooting and he shot a shot or two. I killed him, whom I have been told was WILLIAM TRIBELL, The County Attorney.

I am making this statement to the Commonwealth Attorney FARMER HELTON on my own free will and I have not been forced to do anything by anyone, I have not been threatened nor have I been made any promises, I made this statement which I am signing in the presence of FARMER HELTON, Commonwealth Attorney, ED ASHER, Jailer, DON K. FLOWERS, Kentucky State Police, and CLEON K. CALVERT, Jr., Deputy Jailer."

It will be noted that the confession recounts the slaying of Dixon, Partin, and Thacker in Tennessee. The confession does not elaborate concerning Johnson's activities or whereabouts at the time Reeves was dispatching the first three victims but leaves the inference that Johnson was at hand, since it recites that Johnson and Reeves departed the crime scene together and remained together until they returned to Kentucky at a point near the home of James Johnson where Reeves shot and killed Johnson because, as he expressed it, Johnson "swung to hit me with a shotgun."

Those four killings completed the day's activities for Reeves, but on the next day, his confession notes, officers came looking for him and he ran off. Apparently, he eluded the officers at that time and returned to his residence, only to learn that the officers were again seeking him; he "ran off again." The officers continued their pursuit of Reeves, but he was able to hide in an outhouse from which he subsequently shot and killed William Tribell, then the county attorney of Bell County.

Apparently, the law enforcement officers of Bell County, Kentucky, had learned of the triple slaying in the nearby remote section of Tennessee and also had learned of the likely involvement of Reeves in that affair. At the time of the killing of the Bell County attorney on Saturday, December 14, the authorities had not learned of the slaying of James Lee Johnson.

On Sunday, December 15, Reeves voluntarily surrendered to a deputy sheriff in his neighborhood and was brought to the Bell County jail. The record does not disclose the exact hour of his arrival at the jail, although the jailer related that Reeves' feet were badly frostbitten and that a doctor was called to the jail to administer for that condition.

The trial judge, on motion of Reeves' counsel, conducted a preliminary hearing out of the presence of the jury relating to the admissibility vel non of the confession. At that hearing, it was developed that Honorable Farmer Helton, Commonwealth's Attorney for the 44th Judicial District, Bell County, interviewed Reeves in the Bell County jail on Monday, December 16, beginning about 7:30 p.m. Mr. Helton believed, but was not certain, that he was then accompanied by the jailer, deputy jailer, and perhaps a Kentucky state trooper. His concern then related to the killing of the Bell County attorney as well as the three homicides committed in Tennessee. Mr. Helton testified that he informed Reeves that he was under investigation for at least four murders and that he had the right to remain silent and had the right to counsel. The officer also advised Reeves that anything he said there could and probably would be used against him and, further, that Reeves was privileged to discontinue any questioning at any time he chose. The Commonwealth's attorney deposed that he specifically told Reeves that an attorney would be made available to him, even though Reeves was indigent, but that Reeves indicated that he did not desire an attorney. Mr. Helton's testimony concerning his informing

Reeves of his rights was confirmed by State Trooper Flowers. Flowers testified that the interview occurred on the morning of Tuesday, December 17, and lasted about half an hour. The trooper and Mr. Helton said that no coercion of any sort was exerted by anyone in obtaining any statement from Reeves. Mr. Helton's testimony indicates that he may have interviewed Reeves Monday night and again on Tuesday morning, but he related that he informed Reeves of his constitutional rights on each occasion.

At the interview on Tuesday, December 17, Reeves told Helton and the others that he had killed a man near his own home; he said the man had been trailing him and he did not know who he was. Reeves' account of the incidents in Tennessee, as related by him on the morning of December 17, was to the effect that he had nothing to do with killing the three men in Tennessee and that he did not know how they met their deaths, although he saw their bodies before he left that scene. Neither did he then recount anything about his slaying of James Johnson.

On the morning of December 19, Mr. Helton and Trooper Flowers were notified by the jailer that Reeves wanted to talk further to them. They had planned to take him before the Bell County judge on that morning for arraignment, but when they talked to him at the jail he told them that he desired to tell the entire truth and ultimately gave the written confession heretofore fully quoted. Immediately following his giving that confession, Reeves volunteered to and did accompany the officers to the scene of Johnson's slaying. There Johnson's body was located where Reeves had indicated he had left it. The rifle and shotgun were also found where Reeves directed the officers to look. Johnson's body was found in Whitley County near the Bell County boundary line.

The Bell County judge had issued a murder warrant on December 16 which Trooper Flowers served on Reeves that same day. However, it was not until December 19 that the Bell County judge undertook to appoint an attorney for Reeves at which time he communicated by telephone with Honorable Glen Denham, a lawyer at Middlesboro, who agreed to represent Reeves and who arranged that the preliminary hearing be set for December 31, in order to give him time to investigate. It is noteworthy that the aroused state of public indignation prompted the authorities to believe, understandably, that Reeves' safety required his sequestration during a cooling period.

■ The trial judge concluded that the confession of December 19 was given voluntarily and overruled Reeves' motion to suppress the confession. It is contended by the appellant that the confession should have been suppressed because the Commonwealth failed to show compliance with requirements for custodial interrogation, as prescribed by Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. A review of the evidence heard by the trial judge respecting this demonstrates that the Miranda warnings were properly given and that Reeves voluntarily made the incriminating confession in full light of his constitutional rights. Cf. Carson v. Commonwealth, Ky., 382 S. W.2d 85, cert. den., 380 U.S. 938, 85 S.Ct. 949, 13 L.Ed.2d 825.

■ The appellant contends that the confession is presumptively inadmissible because he was held *incommunicado* for more than four days, interrogated to the extent that he gave two inconsistent confessions, and was not promptly taken before a magistrate. The difficulty with this argument is that there was no evidence of any coercion or intimidation by the officials in obtaining the confession from Reeves. In fact, Reeves did not testify at the exclusionary hearing or at the trial. Neither did he offer any witness to suggest that he had been intimidated. There was no showing that the delay in presenting Reeves before a magistrate was a de-

vice to extract a statement from him or that it had any such effect. As noted in Carson v. Commonwealth, Ky., 382 S.W.2d 85, supra, the failure to present an accused forthwith before a magistrate does not, standing alone, invalidate a confession obtained in the interim. See also 19 A.L.R. 2d 1331, et seq.

■ The appellant next contends that even though the trial court found that the confession was freely and voluntarily given, it erroneously failed to admonish the jury not to consider the confession unless it found that the confession had been given freely and voluntarily. In support of this position, reliance is had upon Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. E.2d 908, 1 A.L.R.3d 1205, and Bradley v. Commonwealth, Ky., 439 S.W.2d 61.

The trial court, during the trial before the jury, carefully admonished the jury when evidence was heard disclosing the four other homicides, whether in the confession or through other means, that the jury should disregard the evidence of other homicides except as it might be considered by the jury to prove a plan, device, scheme, motive, or intent. In fact, when the confession itself was read into evidence counsel for Reeves moved the court to admonish the jury, whereupon the court gave the following admonition to the jury:

> "Ladies and gentlemen of the jury, let me admonish you that any evidence relating to Claude Dixon, Larry Thacker, Dewey Partin, and William Tribell, County Attorney of Bell County, you are not to receive as substantive evidence as related in this statement read to you by the Trooper, but only for the purpose of showing a plan, device, scheme, motive or intent, and for no other purpose."

A similar admonition was given on several other occasions. At no time did counsel for Reeves object to the admonition as given or ask the court to give an additional admonition. In view of this, appellant has not preserved for appellate review any complaint about the substance of the admonition as given. RCr 9.22; Fanelli v. Commonwealth, Ky., 418 S.W.2d 740, 743. It seems plain that the constitutional requirement for the judge's prime determination of voluntariness, as prescribed in Jackson v. Denno, supra, was adequately met. The instruction or admonition directed by Blanton v. Commonwealth, Ky., 429 S.W.2d 407, was not given, but this failure was waived when counsel accepted without objection the admonitions given by the trial judge.

■ Finally, appellant contends that even if it should be held that the Commonwealth adequately advised him of his constitutional rights, there was a failure to show that Reeves knowingly and intelligently waived his right to counsel during the interrogation. We recognize that the Supreme Court, in Miranda v. Arizona, supra, and in many other pronouncements, has placed the burden on the prosecution to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. High standards of proof for the waiver of constitutional rights are required. However, in the present case the proof was uncontradicted that Reeves was informed of his rights, and that he specifically advised the officers that he did not desire to have an attorney. As we understand the procedure directed in Jackson v. Denno, supra, a defendant has the unqualified right to testify at an exclusionary hearing before the judge without affecting his constitutional right not to testify before the jury. In this case, Reeves did not contradict the affirmative statements reflecting that he voluntarily, knowingly, and intelligently waived his privileges. In these circumstances, it seems clear that the Commonwealth has sustained its high burden of proof.

The judgment is affirmed.

All concur.