**STATE of Minnesota, Respondent,**

v.

**Diane Adele WIBERG, Appellant.**

**No. 49787.**

Supreme Court of Minnesota.

July 3, 1980.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, App. Division, Asst. County Atty., David W. Larson, Asst. County Atty., Minneapolis, for respondent.

Heard before ROGOSHESKE, KELLY and YETKA, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant, Diane A. Wiberg, was found guilty by a Hennepin County jury of knowingly receiving stolen property in violation of Minn. Stat. § 609.53, subd. 1 (1978),[1] and was sentenced to 5 years imprisonment. The issues raised on appeal are whether a question asked of defendant by one of the arresting officers was improper, whether defendant's statements to a police officer 2 days after her arrest were the product of an unnecessary delay in being brought before a magistrate or of defendant's statement made at the time of arrest, whether the facts set forth in the affidavit supporting the application for a warrant to search defendant's residence were sufficiently reliable to establish probable cause, whether the trial court erred in failing to instruct on a lesser included offense even though defendant waived the instruction, and whether the evidence was sufficient to support defendant's conviction. We conclude that the trial court erred in admitting a statement defendant made at the time of arrest into evidence and that such error is not harmless beyond a reasonable doubt. We thus reverse and remand for a new trial.

Sometime between May 26 and May 30, 1978, a warehouse located in Minneapolis owned by the Paul Bunyan Company was burglarized and approximately 550 firearms were stolen. In the course of investigating the crime, the police obtained a search warrant authorizing them to search a house rented to defendant and her boyfriend. The search warrant was executed at 12:45 a. m. on Tuesday, June 6, 1978. In a padlocked room the police discovered 451 of the guns taken from the Paul Bunyan Company. The police also found two shotguns in a bedroom closet shared by defendant and her boyfriend and, in a handbag on the closet floor, a pistol and some gun literature.

Defendant and her boyfriend were in the kitchen of the home when the police entered. After they were arrested and given Miranda warnings, defendant stated she did not wish to speak to the police. Shortly after the Miranda warnings were given, one of the officers who heard the warnings administered approached defendant with the handbag he found in the closet and asked if it was hers. Defendant replied that it was, and her response was admitted at trial over her objection. Following the 4-hour search, defendant was brought to the Hennepin County Jail. She remained in

---

1. Minn. Stat. § 609.53, subd. 1 (1978) provides in part:

> Subdivision 1. Any person who receives, buys or conceals any stolen property or property obtained by robbery, knowing the same to be stolen or obtained by robbery, may be sentenced as follows:

> (1) If the value of the property received, bought or concealed is $100 or more, to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both;

jail all day Tuesday and Wednesday and was not arraigned until late in the morning of Thursday, June 8, 1978.

Shortly before being arraigned, defendant was interrogated by a police officer. She was given a *Miranda* warning and agreed to speak with the officer. She admitted that the handbag was hers but stated she had never seen the pistol and did not know how it got into her purse. She denied ever having seen shotguns in the closet she shared with her boyfriend. These statements were also admitted at trial over defendant's objection.

At trial a fingerprint expert testified that a fingerprint found on one of the shotguns in the closet matched defendant's fingerprints. Defendant testified that, while she had not seen the guns in the closet, she had seen two shotguns in the corner of the bedroom and had moved them to the bed. Defendant also testified that she had never seen the pistol or gun literature found in her handbag and did not know how they got there. Defendant stated, without objection, that her boyfriend admitted putting the pistol in her purse.

Defendant first argues that it was improper for one of the arresting officers to ask her if the handbag found in the closet was hers and that her affirmative response to the question should have been suppressed.

One of the fundamental principles of *Miranda* is that a person who is in custody has the right to remain silent and, if he exercises that right, any interrogation must cease. *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court considered under what circumstances, if any, a resumption of questioning is permissible. Concluding that *Miranda* cannot be read to create a *per se* proscription of indefinite duration upon any further questioning once the defendant has indicated a desire to remain silent, the court held that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on

whether his 'right to cut off questioning' was scrupulously honored." 423 U.S. at 104, 96 S.Ct. 326. We followed the *Mosley* holding in *State v. Crisler*, 285 N.W.2d 679 (Minn. 1979).

■ In this case an officer, who only a few minutes earlier had heard defendant indicate that she wished to remain silent after another officer gave her *Miranda* warnings, asked defendant whether a handbag containing one of the stolen guns was hers. The short lapse of time coupled with the inherently coercive atmosphere generated by the late-night search of a private home persuade us that such a question was inconsistent with the officer's obligation to "scrupulously honor" defendant's fifth amendment rights. We conclude, therefore, that the officer's question was a violation of defendant's constitutional rights and, as a result, it was error for the trial court to admit evidence of defendant's response.

■ Because the officer's questioning of defendant shortly after she had exercised her fifth amendment rights was a constitutional violation, the error is prejudicial if there is a reasonable possibility that the erroneously admitted evidence might have contributed to defendant's conviction. *State v. Crisler*, 285 N.W.2d 679 (Minn. 1979). The statement made in response to the officer's improper interrogation at the time of the search was the only direct evidence that defendant owned the purse in which a stolen pistol was found. We therefore conclude that its admission was prejudicial, and constitutes reversible error.

The second issue is whether the defendant's statement to the police officer two days after her arrest should have been suppressed by the trial court, either as the product of an "unnecessary delay" before arraignment under Minn.R.Crim.P. 4.02, or as the fruit of the statement given at the time of arrest. Minnesota's prompt arraignment rule, Minn.R.Crim.P. 4.02, subd. 5(1) provides:

[A]n arrested person * * * shall be brought before the nearest available

judge of the county court of the county where the alleged offense occurred or judicial officer of such court or judge of a municipal court in such county * * * without unnecessary delay, and in any event not more than 36 hours after the arrest, exclusive of the day of arrest, Sundays, and legal holidays, or as soon thereafter as such judge or judicial officer is available.

Under this rule, if a person is held for more than 36 hours, the delay will be presumptively illegal. We have held that a defendant can also show illegal delay under the rule if he is held for less than 36 hours but is nevertheless not brought before a judge without unnecessary delay. *State v. Bradley,* 264 N.W.2d 387 (Minn. 1978). The rationale of rules requiring that arrested persons be promptly arraigned is that to do so avoids the coercive nature of custodial surroundings by preventing secret interrogation and the resultant pressure to confess. In addition, prompt arraignment insures that an arrested person will be fully advised of his rights by a judicial officer soon after his arrest.

Defendant was arrested on Tuesday, June 6, at 12:45 a. m. and was not arraigned until approximately 11 a. m. on Thursday, June 8. While it was 57 hours between defendant's time of arrest and her arraignment, for purposes of Rule 4.02 defendant was held less than 36 hours since the rule provides that the day of arrest is not considered in computing the time a defendant has been held.[2] Defendant's argument on appeal, therefore, is that this delay was unnecessary.

We have not had an opportunity to fully consider what constitutes unnecessary delay under Rule 4.02.[3] In reviewing the decisions under the federal prompt-arraignment rule, Fed.R.Crim.P. 5(a), it is difficult to ascertain specific guidelines. The cases indicate that, although the time factor is a key element in whether a delay is unnecessary, it is also important for a court to consider how the time was used. *See United States v. Johnson,* 467 F.2d 630, 636 (2d Cir. 1972) *cert. denied,* 413 U.S. 920, 93 S.Ct. 3069, 37 L.Ed.2d 1042 (1973). Courts have held that delays as short as 17 hours and 7½ hours were unreasonable. *United States v. Mayes,* 417 F.2d 771 (9th Cir. 1969); *United States v. Binet,* 335 F.Supp. 1000 (D.C. N.Y. 1971). Where the delay has been substantially longer, courts have been willing to find the delay not excessive only where it was not unreasonable under the circumstances or where any evidence obtained from the defendant was not related to the delay. *See, e. g., United States v. Davis,* 532 F.2d 22 (7th Cir. 1976). Thus, where arraignment was delayed, for example because of travel, because no judge was available or because the police wanted to verify an explanation given by the defendant, or where a defendant's statement was made soon after his arrest so that it was not prompted by the ensuing delay, federal courts have found the delay to be justified.

█ In the present case defendant remained in jail for 2½ regular business days before being arraigned, but the record contains no explanation whatsoever for the delay. Surely, since the arrest took place during the week in Hennepin County, there could not have been any difficulty in securing a judge for the arraignment. In our opinion, a delay of this length without any explanation as to its cause compels the conclusion that it was unnecessary and, therefore, a violation of Rule 4.02.

**2.** Thus, since defendant was arrested on Tuesday, June 6, her time of confinement for purposes of R.Crim.P. 4.02 began at 12 a. m. on Wednesday, June 7. Since defendant was arraigned before noon on Thursday, the 36-hour period had not yet expired. As the defendant correctly points out, however, had the arrest occurred 2 hours earlier, it would have been late Monday evening and the ensuing delay would have been presumptively invalid since Tuesday, June 6, would have been included in determining the 36-hour period.

**3.** In *State v. Bradley,* 264 N.W.2d 387 (Minn. 1978), the defendant was arrested at 1:30 a. m. on a Saturday and was not arraigned until 4:15 p. m. on Monday. Excluding Saturday (the day of arrest) and Sunday, we held that the 36-hour period had not run and that there was no evidence of unnecessary delay.

We must next consider the appropriate sanction for a violation of Rule 4.02. The rule does not specify the remedy for a delay that is unreasonable or in excess of 36 hours. The comment to Rule 4.02 states: "The effect of failure to comply with [the rule] on the admission of * * * evidence * * * is left to case-by-case development."[4]

On this question there is a split in jurisdictions. The federal courts, and some state courts, follow the rule in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and automatically exclude statements made which have a reasonable relationship to the unnecessary delay before arraignment. *See, e. g., United States v. Sotoj-Lopez*, 603 F.2d 789 (9th Cir. 1979); *Meyer v. State*, 43 Md.App. 427, 406 A.2d 427 (1979); *State v. Benbo*, 174 Mont. 252, 570 P.2d 894 (1977). However, the *McNabb-Mallory* rule is not one of constitutional dimension and need not be applied in state proceedings. *See e. g., State v. Lewis*, 19 Wash.App. 35, 44, 573 P.2d 1347, 1352 (1978). Where a state refuses to apply the exclusionary rule, it considers violation of the prompt arraignment rule as one fact in an overall determination whether to suppress the evidence related to such a violation. *See e. g., State v. Wyman*, 97 Idaho 486, 547 P.2d 531 (1976), *overruled on other grounds, State v. McCurdy*, 100 Idaho 683, 603 P.2d 1017 (1979); *Reeves v. Commonwealth*, 462 S.W.2d 926 (Ky.1971); *State v. Reynolds*, 298 N.C. 380, 259 S.E.2d 843 (1979); cases cited Annot., 19 A.L.R.2d 1331, § 5 and later case service.

■■ We believe the latter is the more well-reasoned approach. Application of the exclusionary rule exacts a great cost on societal interests by the proscription, in many cases, of concededly relevant and reliable evidence. *E. g., United States v. Janis*, 428 U.S. 433, 448–49, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976); *Stone v. Powell*, 428 U.S. 465, 496–97, 96 S.Ct. 3037, 3053, 49 L.Ed.2d 1067 (1976); (Burger, C. J., concurring). Against this burden on societal interests, however, must be balanced the deterrence of improper police action that the exclusionary rule promotes. We feel that the balance is not struck by the rigid exclusion of reliable evidence reasonably related to a violation of Rule 4.02 in every case in which such a violation occurs. Rather, the trial court should consider, among other things, how reliable the evidence is, whether the delay was intentional, whether the delay compounded the effects of other police misconduct, and the length of the delay. In ruling that the exclusionary rule should not apply rigidly to every violation of the prompt arraignment rule, we do not mean to condone the failure of the state to comply with the rule. A defendant should not be subject to such unexplained delays before appearing before a neutral judge, and such delay should weigh heavily in any trial court determination whether to suppress.

■ On the present record, we would probably affirm the trial court's admission of the second statement if the violation of the prompt arraignment rule were the only reason for suppression. However, the defendant also argues that the second statement should be suppressed as the fruit of the prior statement obtained in violation of defendant's *Miranda* rights under the doctrine in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The rationale for the suppression of a second statement as the fruit of an illegally obtained prior statement is explained in *United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947):

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed.

---

4. In *State v. Larson*, 254 N.W.2d 380 (Minn. 1977), the only case since Rule 4.02 was promulgated where the issue of the appropriate remedy for a violation of the rule has arisen, we considered whether exclusion of evidence obtained during an unnecessary delay was an appropriate sanction. We declined to resolve the issue, however, because there was no evidence that would have been suppressed.

He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first.

However, the *Bayer* court also added:

" * * * But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making one after those conditions have been removed."

*Id.* at 540–1, 67 S.Ct. at 1398. In the present case, the defendant was given full *Miranda* rights and clearly waived them before making the second statement. It is unlikely that the offhand question that elicited the first statement so overcame the defendant's will that the subsequent warning made no impact. *See State v. Dakota,* 300 Minn. 12, 20, 217 N.W.2d 748, 753 (1974). Thus, under the facts of this case, it is unlikely that the "fruits of the poisonous tree" rationale standing alone is a sufficient reason to require the trial court to suppress the second statement. *See id.* *See also State v. Raymond,* 305 Minn. 160, 232 N.W.2d 879 (1975); *State v. Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972); *State ex rel. Pittman v. Tahash,* 284 Minn. 365, 170 N.W.2d 445 (1969). However, we cannot deny the fact that the prior statement had some influence on the second, or, in the *Bayer* court's words, that the defendant knew she could not get the cat back in the bag. In view of the fact that the statement given by defendant to an officer before she was arraigned was influenced by two separate incidents of state misconduct—the violation of *Miranda* rights with regard to the statement made at the time of arrest and the violation of the prompt arraignment rule—we feel that on retrial the trial court should, absent a reasonable and acceptable explanation for the delay in arraignment, suppress the statement as well as the admission defendant made at the time of arrest. Suppression is required, in the absence of evidence showing that the delay was not unreasonable, because the violation

of the prompt arraignment rule compounded the effects of prior state misconduct.

Since the introduction of the defendant's prior statement constituted prejudicial error, we need not decide at this time whether the admission of the statement made while in custody would alone have been cause to reverse. However, since the case must be remanded for a new trial, we have addressed this latter issue because the trial court must consider it on remand.[5]

Defendant next contends that the facts in the affidavit supporting the application for a warrant to search her residence were not sufficiently reliable to establish probable cause. The warrant authorizing the search of defendant's residence was issued on the basis of a police officer's affidavit which stated that the officer had, in the course of investigating the crime, purchased a gun from an undisclosed, unwitting informant with whom he had had no previous dealings. The officer stated that the informant told him at the time he purchased the gun that it was one of several hundred stolen in a burglary. The informant said he knew who committed the burglary and had observed the firearms at a private residence. After receiving this information, the officer told the informant that he would like to order three additional weapons—a rifle, a shotgun, and a Colt .45 pistol. The officer asked for the Colt .45 because he knew that only two Colt .45's had been stolen from the Paul Bunyan Company. The informant delivered the weapons and the officer observed that the box the Colt .45 was in a bore a stock number from the Paul Bunyan Company. The officer then engaged in further conversation with the informant, after which the informant agreed to show him the residence where the stolen guns were located and from which he had obtained the guns the officer purchased. The informant showed the officer a house located on top of a hill one home north of 2340 Lancaster Lane, where the guns were found during the search.

---

**5.** This conclusion only applies to the present record where no reason was presented for the delay. If the state on remand, however, is able to show reasons why the delay was not unnecessary under the rule, the second statement might be admissible.

■ Both the United States and Minnesota Constitutions provide that a search warrant shall not issue absent a showing of probable cause. When the bases for probable cause are hearsay declarations of a police informant, the affidavit containing the hearsay must conform to the following standard:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [facts] were [as] he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant * * was "credible" or his information "reliable."

*Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). *See State v. Rosenthal*, 269 N.W.2d 40 (Minn. 1978). This is the well known "*Aguilar* two pronged test" and has been explained as follows:

> Under what is usually designed as the first prong of *Aguilar*, or what might more precisely be called the "basis of knowledge" prong, facts must be revealed which permit the judicial officer making the probable cause determination to reach a judgment as to whether the informant had a basis for his allegations that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. By contrast, under the second prong of *Aguilar*, properly characterized the "veracity" prong, he may determine

*either* the inherent credibility of the informant *or* the reliability of his information on this particular occasion. That is, the second or "veracity" prong of *Aguilar* may be said to have a "credibility spur" and a "reliability spur."

W. LaFave, 1 Search and Seizure § 3.3, 501–2 (1978). Defendant correctly concedes that the "basis of knowledge" prong was satisfied in this case when the informant told the police officer that he had personally observed "hundreds" of guns including the Colt .45 verified by the officer to be stolen. The sole issue, therefore, is whether the affidavit in support of the warrant satisfied the "veracity" prong of the *Aguilar* test.

■ The prosecution did not attempt to establish the inherent credibility of the informant on the basis of his past performance. Accordingly, the issue can be further narrowed to whether the state satisfied the veracity portion of the *Aguilar* test by showing the informant's information was shown to be reliable on this particular occasion.[6] The United States Supreme Court has held that an informant's reliability on a particular occasion can be established by a declaration by the informant that is against his penal interest. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).[7] In the present case the informant offered to sell to the police officer—whom the informant did not know was a police officer—stolen property; because this obviously is a crime, the informant's statements were against his penal interest. Defendant argues, however, that because the informant was not aware that he was speaking

---

**6.** A commentator has distinguished the two methods of establishing the "veracity" part of the *Aguilar* test:

> Unless the alternative phraseology of *Aguilar* is meaningless, the informant's "credibility" would seem to involve his inherent and ongoing character as a person—his reputation and demonstrated history of honesty and integrity. Informational "reliability," as something separate from its source's credibility, would seem to involve some circumstances assuring trustworthiness on the particular occasion of the information's being furnished.

Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 757–8 (1974).

**7.** In *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the informant admitted to a federal tax investigator that he personally had purchased untaxed whiskey from the defendant. In support of its holding, the court reasoned: "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." 403 U.S. at 583, 91 S.Ct. at 2083.

to a police officer, his statements are not necessarily more credible. According to Professor LaFave, defendant's position is incorrect:

It should not be assumed * * * that an admission against penal interest can be used to establish reliability only when that admission is made directly to a law enforcement officer, for that is not the case. In the hearsay-upon-hearsay situation, as where an informant of established reliability tells police what someone else has told him, there is a need to establish veracity with respect to each person in the hearsay chain. This can be done by showing that these other links made admissions against their penal interest. Indeed, as a general proposition there is more reason to rely upon such admissions than admissions made directly to police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk.

W. LaFave, 1 Search and Seizure § 3.3 at 530 (1978). *See Comi v. State*, 26 Md.App. 511, 338 A.2d 918 (1975). Thus, the reliability of the informant's statements was enhanced by his admission of a crime.

■ An informant's reliability on a particular occasion can also be established if the statements of the informant can be at least partially corroborated independently. W. LaFave, 1 Search and Seizure § 3.3, 551–70 (1978). We have recognized that police corroboration of a key detail of an informant's statement lends credence to the remaining portions of the statement. *State v. Lindquist*, 295 Minn. 398, 401, 205 N.W.2d 333, 335 (1973). In this case, purchase by the police officer of one of the stolen weapons corroborated an important detail of the informant's story and made it reasonable for the police to credit the reliability of the informant.

We conclude, therefore, that when the informant's declaration against his penal interest is coupled with the independent corroboration of part of informant's story, the reliability of the informant was sufficiently established to satisfy the veracity prong of the *Aguilar* test. Thus, even though the affidavit in support of the search warrant gave no basis other than the informant's assertion for believing that the stolen guns were in fact in defendant's house, it was proper for the magistrate issuing the search warrant to consider all of the informant's statements in his determination of probable cause. Given the informant's reliability, we think the affidavit was sufficient to support a finding of probable cause, and accordingly, we conclude that defendant's position on this issue is without merit.

■ Defendant next asserts that the trial court erred in failing to instruct the jury on the lesser included offense of receiving stolen property believing it to be stolen, even though defendant expressly waived the instruction at trial. We have recently considered this issue in *State v. Wybierala*, 290 N.W.2d 603 (Minn. 1980). We held that where a defendant explicitly waives his right to instructions on a lesser included offense he forfeits his right to raise the issue on appeal. While we hold that *Wybierala* is controlling in the present case, we do not encourage the use of such tactics by defense counsel. Given that defendant denied having any knowledge that the guns were stolen and that the lesser included offense is a misdemeanor rather than a felony, we feel that the waiver of the instruction was particularly ill-advised in this case. We also reaffirm our holding in *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975), that even if a defendant attempts to waive an instruction on a lesser included offense, the trial judge has the prerogative of ignoring the waiver and instructing the jury on all offenses warranted by the facts. We hold only that, when a defendant requests the trial court not to instruct the jury on a lesser included offense and the trial judge honors defendant's request, the defendant is precluded from raising the issue on appeal.

■ The final issue raised is that the evidence is insufficient to show that defendant knew the guns were stolen. Defendant argues that no evidence was

presented which showed that she was aware of more than three guns in the dwelling or which placed her in the padlocked room or showed her awareness of what was in the room. We conclude, however, that it was not unreasonable for the jury to draw the inference that defendant knew the property was stolen. *See Husten v. United States*, 95 F.2d 168 (8th Cir. 1938) (unexplained possession of stolen property shortly after the theft is sufficient to justify conclusion by jury of knowledge by possessor that property was stolen); *cf. State v. Bagley*, 286 Minn. 180, 175 N.W.2d 448 (1970) (unexplained possession of stolen property within a reasonable time after a theft is sufficient to support a conviction).

In sum, our conclusion that defendant was prejudiced by the admission of two improperly obtained statements warrants reversal and a new trial.

Reversed and remanded.

ROGOSHESKE, Justice (Concurring specially).

I would hold in this case that defendant's second statement should be suppressed. This record is devoid of any justification much less explanation for a delay of 57 hours in arraigning defendant before a judge in Hennepin County during mid-week when presumably all of the several trial courts were operating. While I agree that the sanction of exclusion should not be applied rigidly to every violation of Rule 4.02, affording the state an opportunity on remand to justify the delay does not seem fair to defendant and may dilute the importance I believe this court should attach to prompt arraignment.

WAHL, Justice (Concurring specially).

I join in the concurring opinion of Mr. Justice Rogosheske.

YETKA, Justice (Concurring specially).

I join in the concurring opinion of Mr. Justice Rogosheske.