**STATE of Minnesota, Respondent,**

v.

**Larry Louis JACKSON, Appellant.**

**No. C4–90–1542.**

Court of Appeals of Minnesota.

April 30, 1991.

Review Granted July 24, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Lee W. Barry, III, Sr. Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Heidi H. Crissey, Sp. Asst. Public Defender, St. Paul, for appellant.

Considered and decided by FOLEY, P.J., CRIPPEN and KLAPHAKE, JJ.

## OPINION

FOLEY, Judge.

Appellant Larry Louis Jackson seeks reversal of his conviction for aggravated robbery or a new trial. Jackson maintains the trial court should have suppressed a voluntary statement given when he allegedly was in custody in violation of the prompt arraignment rule, the trial court erred in admitting *Spreigl* evidence and the evidence presented at trial was insufficient to sustain the conviction. We affirm.

## FACTS

According to the victim's testimony, she was about to enter her parked car at 10 p.m. on December 14, 1989 when a man with an object in his hand came up to her and told her not to scream or he would "stick" her. The victim said the man repeatedly nudged her and told her to get in the car. She refused and told him to take her purse, personal belongings and car, but to leave her alone. The man took her purse and ran off.

There was testimony by married neighbors who lived directly across the street from where the victim's car was parked. The husband said he saw the man approach the victim and run off with her purse. He told his wife to call 911 and, without taking time to put on his shoes, ran outside and pursued the robber. According to the husband, he was able to follow the robber's tracks in what was newly fallen snow. After seeing the tracks led into the yard of a nearby house, the husband went back to his own home.

In the meantime, his wife called 911 and watched her husband run after the robber.

The police had arrived by the time her husband returned. The husband told the police about the tracks in the fresh snow.

The police located the tracks. They were able to differentiate between the footprints of the neighbor and those of the man he had chased because the neighbor was not wearing shoes. According to police testimony, the shoe tracks went behind a van next to a fence and then to a house through its backyard. The police said there were no other fresh tracks leading to or from the house.

The police knocked at the door of the house, and Jackson answered. The police testified they told Jackson about the robbery and the tracks leading into the house. Jackson consented to a search of the house.

The police noticed shoes in an entryway which Jackson said were his. The police testified the shoes had snow on them. They compared the shoes to the robber's tracks in the snow. The shoes were the same size, but the tracks were not clear enough to tell if the tread matched.

The police said Jackson told them he had been in the house since 6 p.m. except to take out the trash. According to the police, however, there were no tracks leading to the garbage cans outside and there was a substantial amount of trash sitting out in the kitchen.

Jackson also told the police that, when he took out the trash, he had gone over to the van by the fence to see if anyone was in it. He claimed the van was not there before 6 p.m. The police testified, however, that it appeared the van had been there for at least a couple of snowfalls because snow that had accumulated prior to the snowfall that evening surrounded the van. The ground under the van was bare.

The police searched the area around the van and the fence. They testified they found the victim's purse where it apparently had been thrown over the fence. After finding the purse, the police read Jackson his *Miranda* rights and arrested him. He claimed not to know anything about the robbery.

Jackson agreed to be interviewed by the police the next day while he was in custody. He again denied knowing anything about the robbery.

Two days after the arrest, on December 16, 1989, the probable cause hold on the robbery charge was released pending filing of a complaint. That same day, however, an arrest and detention warrant was issued for a hearing on allegations Jackson had violated the conditions of previously-imposed probation. Jackson was held on that warrant the day it was issued.

Jackson summoned the police to talk to him again on December 20, 1989. The police testified that, after Jackson was given a *Miranda* warning, he told them he had lied about the van not being there earlier the evening of the robbery. He also said he had lied when he said he knew nothing about the robbery because he wanted to protect his fourteen-year-old brother.

He claimed his brother had committed the robbery while dressed in Jackson's clothes. Jackson said his brother brought the purse into the house, put his own clothes back on and went out the front door. Jackson said he went into the backyard and threw the purse over the fence. The police testified that, when Jackson was asked why the police had not found tracks in the snow that were consistent with his statement, Jackson said the police had lied.

A complaint charging Jackson with aggravated robbery was filed on December 21, 1989. Jackson made his first appearance before a judge on December 26, 1989. At a pretrial hearing, the trial court denied Jackson's motion to suppress the statement he gave on December 20.

The testimony of the victim and the witnesses at trial as to the robber's appearance differed. No one positively identified Jackson as the robber. Jackson did not testify. The jury returned a verdict of guilty to the charge of aggravated robbery.

## ISSUES

1. Did the trial court err in refusing to suppress Jackson's December 20, 1989 voluntary statement?

2. Did the trial court err in admitting *Spreigl* evidence?

3. Was the evidence presented at trial sufficient to sustain the conviction?

## ANALYSIS

1. Jackson argues the trial court should have suppressed his voluntary statement as a sanction for his being in custody in violation of the prompt arraignment rule of Minn.R.Crim.P. 4.02, subd. 5(1). Minn.R. Crim.P. 4.02, subd. 5(1) provides an unreleased arrested person shall be brought before a judge

> without unnecessary delay, and in any event, not more than 36 hours after the arrest, exclusive of the day of arrest, Sundays, and legal holidays.

Jackson was arrested on Thursday, December 14. The release on the robbery charge was authorized on Saturday, December 16. That same day, however, a hold was put on Jackson based on the warrant for alleged probation violation. Jackson asserts that holding him on the probation violation warrant was a subterfuge to keep him in custody while the police gathered evidence. There is no support in the record for this allegation. There also is no evidence the police put any pressure on Jackson to give a statement.

The state contends Jackson's statement was made while he was properly in custody. The state argues an evidentiary hearing on the probation violation was not mandated until seven days after the hold was placed on Jackson on the arrest and detention warrant. *See* Minn.R.Crim.P. 27.04, subd. 2(4). Rule 27.04, however, also provides that

> the probationer be brought before a judge * * *, without unnecessary delay, and in any event not later than 36 hours after the arrest exclusive of the day of arrest, or as soon thereafter as such judge * * * is available.

Minn.R.Crim.P. 27.04, subd. 1(2).

The probation violation hold started on Saturday, December 16. Jackson summoned the police to give his voluntary statement on Wednesday, December 20. If

one were to count the intervening Sunday, which, strictly speaking, rule 27.04 invites, it appears Jackson could have summoned the police as much as 72 hours after the probation hold started.

The Minnesota Supreme Court has found an unexplained delay of 57 hours from arrest until appearance before a judge to be unnecessary and thus a violation of the 36–hour rule of rule 4.02 even though the appearance was within 36 hours of the arrest exclusive of the day of arrest. *State v. Wiberg*, 296 N.W.2d 388, 392 (Minn.1980). Here, the state has not explained what caused the delay while maintaining that neither rule 4.02 or rule 27.04 have been violated.

We are troubled that Jackson was held for seven days, from Thursday, December 14 until Thursday, December 21, before he was charged by complaint and that he was held for 11 days, or until Tuesday, December 26, before he was brought before a judge. It is unnecessary, however, to determine whether Jackson was held in violation of either rule 4.02 or rule 27.04. Suppression of Jackson's statement would not automatically follow in any event.

■ Whether to impose the sanction of suppression of a statement made while in custody in violation of the prompt arraignment rule is determined on a case-by-case basis. *Wiberg*, 296 N.W.2d at 393. Factors to be considered are

how reliable the evidence is, whether the delay was intentional, whether the delay compounded the effects of other police misconduct, and the length of the delay.

*Id.*

■ Here, it does not appear the delay was intentional and Jackson concedes there was no other police misconduct. The length of the delay from the imposition of the probation violation hold until Jackson made his statement was not egregious. However implausible it might appear, the statement also had some indicia of reliability. Jackson told the police he had lied to them about the van not being outside when he came home at 6 p.m., which was corroborated by the observations of the police the night of the arrest. Furthermore, on ap-

peal Jackson continues to assert the exculpatory aspects of his statement. Finally, there is nothing in the record to show that the statement was anything but voluntary.

■ Even if we were to conclude the statement should have been suppressed, its admission would amount to harmless error. The other evidence of Jackson's guilt was strong. *See State v. Skinner*, 450 N.W.2d 648, 652 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 28, 1990).

■ 2. Jackson argues the trial court erred in admitting *Spreigl* evidence about his prior confessed-to similar robbing of another woman. Where evidence of identity is inconclusive and crucial, the state may fortify its case with *Spreigl* evidence to show identity. *State v. Perez*, 397 N.W.2d 916, 920 (Minn.App.1986) (citing *State v. Hudson*, 281 N.W.2d 870, 873 (Minn.1979)).

■ Jackson concedes that no witness was able to identify him. Nonetheless, he argues the evidence of the tracks in the snow and of his being the only one in the house after the robbery was enough to make out a case against him. We agree with Jackson that the state did not need the *Spreigl* evidence to prove its case. However, under the unique facts of this case, we find the other evidence of guilt was so strong that the introduction of the *Spreigl* evidence was harmless error. *See Jackson v. State*, 447 N.W.2d 430, 435 n. 1 (Minn.App.1989) (error is harmless if accused has had fair trial and jury was not allowed to convict on propensity to commit crime).

■ 3. Jackson contends the evidence presented at trial was insufficient to sustain the conviction. On review, this court does not try the facts again. *State v. Ellingson*, 283 Minn. 208, 211, 167 N.W.2d 55, 57 (1969). Evidence is sufficient to sustain a conviction if,

viewing the evidence and any reasonable inferences that could be drawn therefrom in a light most favorable to the state, the jury could reasonably find the defendant guilty beyond a reasonable doubt.

*State v. Buchanan,* 431 N.W.2d 542, 547 (Minn.1988) (citations omitted).

A conviction may be based on circumstantial evidence if the evidence reasonably supports an inference of guilt. *State v. Combs,* 292 Minn. 317, 321, 195 N.W.2d 176, 178 (1972). The tracks in the snow, Jackson's wet shoes and the location of the purse when found are consistent with such an inference.

Jackson maintains there were discrepancies in the testimony as to the robber's attire. Nonetheless, these discrepancies were fully aired before the jury. *See State v. Bias,* 419 N.W.2d 480, 485 (Minn.1988) (jury assesses credibility and was "fully apprised of discrepancies in the evidence").

Jackson also argues the assertions in the statement he wanted suppressed show there is a reasonable doubt whether his brother, rather than he, committed the crime. We find there was sufficient evidence to support the verdict.

We find no merit in Jackson's pro se ineffective assistance of counsel claim. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (attorney's conduct must so undermine adversarial process that trial cannot be relied on to produce just result).

Jackson also asserts pro se that his testimony would have prevented conviction. It appears, however, that Jackson made a reasoned, knowing choice. If he testified, he faced impeachment by prior convictions.

## DECISION

Any error in admitting the voluntary statement was harmless. The trial court did not err in admitting the *Spreigl* evidence. The evidence was sufficient for conviction.

Affirmed.